MICHAEL J. SMITH, CA Bar No. 229099
Email: mjslawfirm@gmail.com
LAW OFFICES OF MICHAEL J. SMITH
P.O. Box 7746
Porter Ranch, CA 91327
TEL: 323-355-5476  FAX: 866-707-7743

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR SEGLA, an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>　　　　　　　　　　Defendant. | Case No.: **'20CV0157 AJB  JLB**<br><br>**COMPLAINT FOR:**<br>**1. VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE II, 42 U.S.C. § 12101 ET SEQ. (DISCRIMINATION BASED ON DISABILITY)**<br>**2. VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 ET SEQ. (DISCRIMINATION BASED ON DISABILITY)**<br>**3. VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT. CIVIL CODE § 51 ET SEQ. (DISCRIMINATION BASED ON DISABILITY)**<br>**4. VIOLATION OF 42 U.S.C. § 1983 (DEPRIVATION OF FEDERALLY PROTECTED RIGHT)**<br>**5. CALIFORNIA NEGLIGENCE (CIVIL CODE § 1714(a) and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)** |

Plaintiff CONNOR SEGLA ("Connor"), an individual, by and through his attorney, hereby alleges as follows against Defendant, SAN DIEGO UNIFIED SCHOOL DISTRICT ("District" or "SDUSD."):

## INTRODUCTION

1. Connor Segla is a 22-year-old former special education student diagnosed with Autism Spectrum Disorder (Severity Level 3).

2. Connor is developmentally disabled, due to his Autism diagnoses and its impact on his life, and is therefore eligible for lifelong services from San Diego Regional Center.

3. Connor was eligible for special education services (under the IDEA, 20 U.S.C., Section 1400, et seq.) and lived within the boundaries of the San Diego Unified School District until he aged out of special education in June 2019.

4. The District was responsible for providing special education services to Connor until, through mutual agreement with the District, he executed a settlement agreement (treating him as a private school student) on January 14, 2019.

5. As a special education student with a disability, Connor was also protected under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Unruh Civil Rights Act.

6. Connor's Mother, Debra Segla, ("Parent") was Connor's educational rights holder until he turned 18, then, with Connor's permission, acted as Connor's educational rights holder until he aged out of special education.

7. The District, through their staff, illegally halted Connor's special education program and services, thereby denying him access to any of the District's school placements and services, and thereafter refused to enroll Connor into a District school or hold an Individualized Education Plan ("IEP") meeting to make an appropriate offer of educational placement.

8. Through the acts and omissions of the District and District's employees, Connor was discriminated against based upon his disability, denied the benefits and services of

the District, and thereby suffered and experienced severe emotional distress and other damages.

9. This is an action to secure relief for violations of rights guaranteed by the Americans With Disabilities Act, Title II ("ADA"); Section 504 of the Rehabilitation Act ("Section 504"), the Unruh Civil Rights Act ("Unruh"); Government Code, Section 815.2, regarding acts and omissions of public entity employees; Section 1983 liability for depriving Connor of federally protected right; and California negligence (specifically, negligent infliction of emotional distress).

10. Connor brings this action as an individual to recover damages for the harm done to him by the District due to their illegal acts and omissions.

11. An actual controversy has arisen and now exists between the parties concerning their respective rights, duties, and obligations under federal and state law.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over Plaintiff's claims arising under the ADA, Section 504, and Section 1983, pursuant to 28 U.S.C., Section 1331.

13. Plaintiff's state law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's remaining claims pursuant to 28 U.S.C., Section 1367.

14. Venue is proper in this Court, pursuant to 28 U.S.C., Section 1391(b), because the events giving rise to the claims made herein occurred in this Judicial District, in the County of San Diego, and the Defendant has its principal place of business within this Judicial District and is subject to the Courts personal jurisdiction within this Judicial District.

## THE PARTIES

15. Connor, an individual, is and was, at all times mentioned herein, a resident of San Diego County, California.

16. Defendant, SDUSD, is now, and at all times mentioned herein, a public-school district, with its principal address located at 4100 Normal Street, San Diego, California 92103.

17. SDUSD provides placements and services to students through age 22, who have special education needs as well as providing placements and services for non-special education students without disabilities.

18. SDUSD was responsible, at all relevant times mentioned herein, for the public school and special education placement of Connor Segla.

19. SDUSD receives federal and state financial assistance within the meanings of the ADA, Title II and Section 504 of the Rehabilitation Act.

## DEFENDANT'S WRONGFUL CONDUCT

20. Connor attended Mira Mesa High School ("Mira Mesa"), within the District, in a special education classroom, integrated for some of the day with general education students, until the end of the 2015-2016 school year.

21. Near the end of the 2015-2016 school year Connor experienced severe psychiatric problems related to his attendance at Mira Mesa High School and perceived bullying by other peers and staff members.

22. Due to his acute and severe psychiatric condition (resulting in hospitalization) Connor could not return to Mira Mesa for the beginning of the 2016-2017 school year.

23. Early in September 2016, Mr. Erik Sullivan, Vice Principal at Mira Mesa High School, contacted Parent to see why Connor had not returned to school.

24. In response to Mr. Sullivan's contact, Parent informed Mr. Sullivan that another school placement was needed due to Connor's mental health needs.

25. Counsel for Connor contacted Andrea Thrower, a Section 504 Coordinator for the District, to move Connor to University City High School ("UC High"). Ms. Thrower agreed to this.

26. The District refused to enroll Connor at UC High, due to alleged issues with lack of records and enrollment paperwork, even though Mira Mesa High School had all of Connor's records and Connor was not, at this time, disenrolled from the District.

27. Therefore, Counsel requested an IEP meeting in writing from Mr. Sullivan at Mira Mesa on October 31, 2016. Such meeting, under California special education law, must be held within 30 days of the request.

28. Instead, on November 4, 2016, Mr. Sullivan provided what purported to be Prior Written Notice ("PWN") stating that Connor would be "dropped" from the District if the school did not hear from Parent by November 14, 2016. No mention was made of the outstanding request for the IEP meeting.

29. Following receipt of the PWN from Mr. Sullivan, Counsel repeatedly made additional written requests for an IEP meeting to get Connor back in school.

30. The District refused to convene an IEP meeting for Connor because he was not attending school, even though he was unilaterally and illegally dropped from the District following their purported PWN of November 2016.

31. There is no special education law, in state or federal statutes, that requires a student to be enrolled in school before an IEP meeting is convened. Such a law would directly contravene school district and Special Education Local Plan Area ("SELPA") "child find" responsibilities.

32. Finally, after Counsel contacted Deann Ragsdale, then Executive Director of Special Education for the District, and Lorelei Olsen, then Director of Special Education for the District, an IEP meeting was convened on December 14, 2017, over a year from the original request.

33. The offer of placement from the December 14, 2017 IEP meeting did not meet Connor's educational and psychological needs and the District, due to their "dropping" of

Connor from any educational program, did not have the information needed to make an appropriate offer of placement.

34. In May 2017, during the period in which Connor was illegally dropped from the District, the SDUSD missed his critical triennial reevaluation that could have provided the information needed to make an appropriate offer of placement to Connor.

35. Parent and Connor, through Counsel, initiated a Due Process Request (20 U.S.C. § 1415(b)(6)) against the District on October 18, 2018. Through a settlement agreement following mediation (20 U.S.C. § 1415(e)), executed on January 14, 2019, the District and Connor agreed on a new placement.

36. From the beginning of the 2016-2017 school year to when Connor settled with the District on January 14, 2019, he received no placement or services from the District whatsoever. Connor received no schooling and was completely denied access to the District's school sites, programs, and placements for almost two and a half years.

37. During the period during which Connor received no schooling or services, his mental state declined further, and he had to be placed on several psychotropic medications.

38. A recent neuropsychological evaluation, conducted by Dr. Betty Jo Freeman, shows that Connor's levels of academic, adaptive, and cognitive functioning have all declined precipitously from previous assessments conducted before the denial of placement and services by the District.

39. As a result of the discriminatory denial of placement and services by the District, Connor experienced serious emotional distress, depression, suffering, anguish, nervousness, anxiety, worry, humiliation, and shame.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

40. If Connor was not a special education student, the acts of the District would still have been illegal, under Section 504 and the ADA Title II.

41. 20 U.S.C. Section 1415(l) requires exhaustion of administrative remedies before filing a civil suit.

42. Connor filed a special education due process request with the Office of Administrative Hearings on October 18, 2018.

43. Connor settled his due process request, following a resolution session and mediation, on January 14, 2019.

44. Connor has, therefore, exhausted his administrative remedies under the IDEA.

45. In addition, this Complaint alleges policies and practices of the Defendant that are of general applicability and contrary to law. Additionally, the monetary damages sought herein are necessary to remedy the harm done to Connor by the District's actions and adequate relief was not, therefore, available through administrative remedies alone. (*Hoeft v. Tucson USD*, 967 F.2d 1298 (9th Cir. 1992).

46. Connor is no longer eligible for special education, so administrative remedies, available through OAH, such as placements and services, would be inadequate to remedy the harm done to Connor.

## COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT

47. Plaintiff, through counsel, has complied with the requirements of California Government Code, Section 900 et seq. (California Torts Claims Act ("CTCA")).

48. Plaintiff submitted a written claim for damages to the District on July 12, 2019.

49. The District rejected the claim, in writing, on July 24, 2019.

50. Plaintiff is filing this Complaint within six months of the District's written rejection of the claim for damages, as required by California Government Code, Section 945.6.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE II, 42 U.S.C. § 12101 ET SEQ.

## (DISCRIMINATION BASED ON DISABILITY)

51. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

52. District is a public entity that provides and makes available services, programs, and activities, and is therefore required to comply with Title II of the ADA.

53. Connor has a mental impairment that substantially limits one or more of his major life activities, as shown by his Autism Spectrum Disorder, regional center eligibility, and special education eligibility.

54. Based on Connor's disability, he was completely excluded from participating in and benefitting from any aid, benefit, or service offered by the District.

55. District personnel purposefully acted to remove Connor from the school district, as evidenced from providing written notice to exclude him from the District.

56. District personnel acted with deliberate indifference to Connor's exclusion from the District, as evidenced by the time that lapsed between Connor being dropped from the District and finally being reinstated.

## SECOND CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 ET SEQ.
## (DISCRIMINATION BASED ON DISABILITY)

57. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

58. District receives federal financial assistance and is therefore required to comply with Section 504 of the rehabilitation act.

59. Section 504 requires that a school district provide a Free Appropriate Public Education to a disabled student like Connor.

60. Connor has a mental impairment that substantially limits one or more of his major life activities, as shown by his Autism Spectrum Disorder, regional center eligibility, and special education eligibility.

61. Based on Connor's disability and by reason of his disability, he was completely excluded from participating in and benefitting from any aid, benefit, or service offered by the District.

62. District personnel purposefully acted to remove Connor from the school district, as evidenced from providing written notice to exclude him from the District.

63. District personnel acted with deliberate indifference to Connor's exclusion from the District, as evidenced by the time that lapsed between Connor being dropped from the District and finally being reinstated.

## THIRD CAUSE OF ACTION
## VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT. CIVIL CODE § 51 ET SEQ.
## (DISCRIMINATION BASED ON DISABILITY)

64. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

65. Defendant denied Connor full and equal access to any District program.

66. Plaintiff is informed and believes and thereon alleges that a substantial motivating factor for District disenrolling plaintiff from school was Connor's disability.

67. As a direct and proximate result of defendant's conduct, plaintiff was harmed by being denied access to his right to education from August 2016 through January 14, 2019.

68. Defendant's violation of plaintiff's rights under Civil Code Section 51 entitles plaintiff to receive compensatory damages and attorney's fees, as provided for in Civil Code Section 52 and prayed for below.

69. In committing the acts alleged in this complaint, defendant knew or should have known that its actions were likely to cause injury to plaintiff. Plaintiff is informed and

believes and thereon alleges that defendant intended to cause injury to plaintiff and acted with a willful and conscious disregard of plaintiff's rights under Civil Code Section 51, thereby entitling plaintiff to recover treble damages, or a minimum of $4,000 for each occurrence.

70. As the District is alleged to have violated the ADA (First Cause of Action, herein), they are also alleged to have violated the Unruh Civil Rights Act under California Civil Code, Section 51(f).

## FOURTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
## (DEPRIVATION OF FEDERALLY PROTECTED RIGHT)

71. The District, as a public entity, is responsible for and operates through the actions of its employees, such as Erik Sullivan.

72. Erik Sullivan and other District employees were operating under the color of state law at all relevant times herein.

73. Plaintiff is informed and believes and thereon alleges that defendant implements a District policy, custom, or usage of allowing school officials to "drop" special education students from District attendance using prior written notice or similar.

74. If there is not such policy, custom, or usage, then District failed to adequately train staff members, such as Erik Sullivan, in the proper treatment of disabled students who need alternative school placement or are unable to attend their current school placement due to their disabling condition.

75. The District's policy, custom, or usage, or failure to train staff members adequately on the correct policy, custom, or usage, resulted in the violated of the following federal laws: the IDEA, ADA Title II, and Section 504 of the Rehabilitation Act. Through their misconduct, the District also violated Connor's Fourteenth Amendment right to equal protection.

76. The District, through the violation of the IDEA, ADA Title II, and Section 504 caused damage to Connor as described herein.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE (CALIFORNIA LAW)

## (CIVIL CODE § 1714(a) and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

77. Under California Government Code, Section 815.2, the District is vicariously liable for injuries caused by the acts or omissions of their employees acting within the scope of their employment.

78. California Civil Code, Section 1714(a) defines negligence such that everyone is responsible for an injury caused to another by want of ordinary care.

79. Erik Sullivan and other District employees, unknown at this time, were negligent in carrying out their duties within the scope of their employment, by, for example, issuing a prior written notice that resulted in a student losing all access to school placements and services; and refusing to enroll a student into a school even though they should never have been disenrolled from their prior school.

80. Erik Sullivan and other school employees owed a duty to Connor based on their preexisting relationship as school administrator(s) and student. Such duty was negligently breached by carrying out their duties in a way that caused the loss of Connor's placement and services and resulted in severe emotional distress for Connor.

81. Such negligent acts caused Connor to suffer severe emotional distress.

## PRAYER

WHEREFORE, Plaintiff prays for judgement as follows:

1. Compensatory damages and restitution in an amount to be determined at trial;
2. For punitive damages according to proof;
3. For attorney fees, statutory costs, and expenses;
4. For judgement in favor of Plaintiff and against Defendant on all causes of action; and
5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Connor Segla, an individual, hereby demands a jury trial.

DATED: January 23, 2020

LAW OFFICES OF MICHAEL J. SMITH

By: /s/ Michael J. Smith
Michael J. Smith
Attorney for CONNOR SEGLA

Email: mjslawfirm@gmail.com